UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| TONYA HEARD, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:22-cv-288-GMB |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

On April 16, 2018, Plaintiff Tonya Heard filed an application for supplemental security income ("SSI"). Her alleged disability onset date is March 17, 2018. Heard's application was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a video hearing on January 6, 2020, and denied Heard's claims on July 1, 2020. After a review of the ALJ's decision, the Appeals Counsel remanded the case back to the ALJ. The ALJ held a supplemental telephone hearing on June 22, 2021, and denied Heard's claims for a second time on July 22, 2021. The Appeals Council declined review on January 3, 2022. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of January 3, 2022.

Heard's case is now before the court for review pursuant to 42 U.S.C.

§ 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 12.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be reversed and remanded.

## I.  STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the

---

[1] In general, the legal standards are the same whether a claimant seeks a period of disability and disability insurance benefits ("DIB") or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the

Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Heard bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his former occupation?
> (5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

4

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Heard was born on January 21, 1974, and was 44 years old on her alleged onset date. R. 471. At her hearing, Heard testified that her most significant ailments are unpredictable seizures, lupus, and fibromyalgia. R. 193, 195. And in her disability report, she listed grand mal seizures, hypertension, depression, renal failure stage 1, synascope, and frequent falls due to seizures as the primary medical conditions preventing her from working. R. 475.

Heard completed the eleventh grade but did not graduate from high school or obtain her GED. R. 191, 476. She never attended any type of specialized job training, trade, or vocational school. R. 191–92, 476. She has worked in restaurants in jobs that required cutting produce and assisting in daily meal planning. R. 476–

77. At the time of the hearing, she was separated from her husband. R. 190. She lives with her sister, her nephew, and her 18-year-old son at her sister's house. R. 190–91. Heard testified that she has to live with her sister so that someone can watch her all the time because of the seizures and resulting falls and injuries. R. 197. Heard uses a cane and a walker because she has trouble with her balance. R. 137–38. Her sister helps her with her daily activities, including dressing and bathing. R. 200.

Heard has a long history of seizures, many of which have resulted in falls and injuries. Treatment notes throughout the applicable time period repeatedly reference her risk for falls, poor balance, and difficulty walking. *See* R. 104–08. For example, the medical records reflect the following incidents:

- On October 28, 2018, Heard fell and suffered a closed fracture of the lateral malleolus and a "minimally displaced spiral fracture of the distal fibular diaphysis." R. 844, 869.
- On March 20, 2018, Heard visited the Riverview Regional Medical Center reporting a loss of consciousness caused by a potential seizure. R. 778. She alleged that she "woke up on the floor with soreness of her back and chin," and she had tenderness on examination and mild tenderness in her left scapula. R. 778–79.
- In November 2018, Heard reported that she had been experiencing seizures twice per month with a recent seizure resulting in a broken right ankle. R. 853. She also was "missing multiple teeth that were knocked out due to fall from seizure." R. 853.
- On September 7, 2019, Heard visited the Riverview Regional Medical Center and reported she had a seizure four days earlier. R. 1078. On examination, she had tenderness in her right shoulder and left knee. R. 1079. She also had limited range of motion in her left knee. R. 1079. She was diagnosed with a strain in her right shoulder and right knee. R. 1082.

- In January 2020, Heard was diagnosed with a tear to the medial collateral ligament in her knee from a recent fall. R. 1338–41.
- During the week of August 10, 2020, Heard had two seizures and fell during the second seizure. R. 1121.
- On February 23, 2021, Heard reported to the Riverview Regional Medical Center after a seizure that resulted in an injury to her left foot. R. 1432–35.  The records note an abnormal gait, as well as ecchymosis, swelling and severe pain with abnormal x-ray," including a metatarsal and phalanx fracture. R. 1435.
- On March 15, 2021, Heard reported a seizure. R. 1270.
- On May 28, 2021, Heard reported that she had a seizure resulting in right shoulder pain. R. 1362.  The x-ray showed a broken humorous bone. R. 1365–66.

Additionally, there are repeated references throughout the medical documents to Heard's use of, and necessity for, a cane.  The most recent medical records and Heard's testimony at the second hearing support her need for a walker or rollater. R. 137–38, 1136, 1159–60.

The ALJ issued his decision on July 27, 2021. R. 111.  Under step one of the five-step evaluation process, he found that Heard has not engaged in substantial gainful activity since April 16, 2018, the application date. R. 95.  The ALJ concluded that Heard suffers from the severe impairments of depression, anxiety, and seizures/syncopal episodes with falls. R. 95–96.  The ALJ found that Heard also suffered from the non-severe impairments of substance abuse, chronic kidney disease, systemic lupus erythematosus, carpal tunnel syndrome, neuropathy, osteoporosis, and obesity. R. 96– 97.  He also noted that Heard's alleged fibromyalgia did not meet the specific factors for finding fibromyalgia to be a

medically determinable impairment. R. 97–98. While the ALJ found that Heard's medically determinable impairments do cause significant limitations in her ability to perform basic work activities, he concluded at step three of the analysis that none of Heard's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 99–100.

Before proceeding to the fourth step, the ALJ determined that Heard had the residual functional capacity ("RFC") to perform a limited range of medium work. R. 101. More specifically, the ALJ found that Heard had the following limitations with respect to medium work, as defined in 20 C.F.R. § 416.967(c):

> the claimant is unable to climb ladders, ropes or scaffolds, and unable to perform around hazards or in concentrated exposure to extreme hot or cold temperatures or vibration. The cla[i]mant can occasionally climb ramps or stairs, crawl, but frequently balance, stoop, kneel, or crouch. The claimant can understand, remember, and carry out simple instructions, and can maintain attention and concentration to those tasks for a period of two hours. The claimant can maintain an acceptably consistent work pace, can travel independently to local, familiar locations, and can maintain safety awareness. However, she should not have excessive workloads, rapid changes, or multiple demands. Interaction with the public, co-workers, and supervisors should be no more than occasional and brief (no more than thirty minutes at one time). Any change in the work setting or expectations should be no more than occasional and well-explained. She would require the use of a cane on uneven terrain or distances greater than 50 feet.

R. 101. At the fourth step, the ALJ considered Heard's age, education, work experience, and RFC in determining that she was not capable of performing her past relevant work as a janitor. R. 109. However, the ALJ determined that there were

other jobs existing in the national economy that Heard could perform, including work as an addressing clerk, an assembler, and a document preparer. R. 110. Therefore, the ALJ concluded that Heard had not been under a disability since April 16, 2018, the date the application was filed. R. 109–10. Based on these findings, he denied Heard's application for SSI. R. 110.

## IV.  DISCUSSION

The responsibility for making the RFC determination rests with the ALJ. *See* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."). "An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, *i.e.*, where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013) (internal citation omitted). The ALJ must "'provide a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached'" for the court to determine that substantial evidence supports an RFC. *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D.

Fla. 2005)); *see also Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.").

Here, the court finds that the ALJ's RFC assessment is not supported by substantial evidence. The ALJ found that Heard could perform medium work with a number of limitations. Some of those limitations include "occasionally climb[ing] ramps or stairs [and] crawl[ing]" and frequent balancing, stooping, kneeling, or crouching. R. 101. But the ALJ found that Heard had a severe impairment of "seizures/syncopal episodes with falls" (R. 96) and that she "would require the use of a cane on uneven terrain or distances greater than 50 feet." R. 101. These findings appear to be inconsistent with the definition of medium work and with some of the limitations the ALJ imposed on Heard.

In particular, "[t]he regulations define medium work as lifting no more than 50 pounds at a time with frequently lifting or carrying of objects weighing up to 25 pounds." SSR 83–10, 1983 WL 31251 (S.S.A. 1983). The ALJ did not restrict Heard's lifting in any way, despite the severe impairment of "seizures/syncopal episodes with falls" (R. 96) and "the use of a cane on uneven terrain or distances greater than 50 feet" (R. 101), nor did he give any explanation for this apparent inconsistency with a limited range of medium work. Additionally, "[t]he

10

considerable lifting required for the full range of medium work usually requires frequent bending-stooping." SSR 83–10, 1983 WL 31251 (S.S.A. 1983). "Stooping is a type of bending in which a person bends . . . her body downward and forward by bending the spine at the waist. Flexibility of the knees as well as the torso is important for this activity. Crouching is bending both the legs and spine in order to bend the body downward and forward." *Id*. And "[i]n most medium jobs, being on one's feet for most of the workday is critical." *Id*. The ALJ did not explain how a person who requires the use of a cane for walking distances greater than 50 feet can perform a limited range of medium work, especially with frequent stooping, kneeling, or crouching. Nor did he reconcile his assessment with the evidence of Heard's falls and resulting injuries. *See, e.g.*, R. 778, 843–45, 853–54, 1080–82, 1133–34, 1121–23, 1142–4, 1259, 1341–43, 1433–35. Finally, the RFC does not address any limitation on driving or operating machinery despite the evidence that Heard does not and cannot drive because of her impairments.[2] Accordingly, the decision is due to be reversed because the ALJ did not provide sufficient reasoning for the court to determine that substantial evidence supports the formulation of Heard's RFC.[3]

---

[2] While the court agrees with the Commissioner that one omission might be harmless error (*see* Doc. 24 at 10–11), the court cannot ignore multiple omissions and inconsistencies in the evidence and the RFC determination.

[3] Remand also will provide the ALJ with the opportunity to correct an error relating to the timing of Heard's prescription for a rollator. *See* Doc. 21 at 17–20; Doc. 24 at 5–6.

## V. CONCLUSION

For these reasons, the court concludes that the ALJ's opinion is not supported by substantial evidence. The decision of the Commissioner is due to be reversed and remanded for further proceedings consistent with this memorandum opinion. An appropriate order will be entered separately.

DONE and ORDERED on January 10, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE